## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-cv-61238-SCOLA/ROSENBAUM

TODD DEEHL, Derivatively on Behalf of
MAKO SURGICAL CORP.,

                       Plaintiff,

     v.

MAURICE R. FERRÉ, FRITZ L.
LAPORTE, CHRISTOPHER C. DEWEY,
S. MORRY BLUMENFELD, CHARLES
W. FEDERICO, FREDERIC H. MOLL,
WILLIAM D. PRUITT, JOHN G.
FREUND, JOHN J. SAVARESE, and
RICHARD R. PETTINGILL,

                       Defendants,

     -and-

MAKO SURGICAL CORP., a Delaware
corporation,

             Nominal Defendant.

_____

### VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT
### FOR BREACH OF FIDUCIARY DUTY, WASTE OF
### CORPORATE ASSETS, AND UNJUST ENRICHMENT

      Plaintiff, by his attorneys, submits this Verified Amended Shareholder Derivative
Complaint against the defendants named herein.

### NATURE OF THE ACTION

      1.     This is a verified shareholder derivative action brought by plaintiff on behalf of
nominal defendant MAKO Surgical Corp. ("MAKO" or the "Company") against certain of its
officers and directors for breach of fiduciary duty, waste of corporate assets, and unjust
enrichment. These wrongs resulted in damages to MAKO's reputation, goodwill, and standing in
the business community. Moreover, these actions have exposed the Company to hundreds of
millions of dollars in potential liability for violations of state and federal law.

2.      Founded in November 2004, MAKO is a medical device company that introduced the first robotic-arm assisted technology for orthopedic surgical procedures in the United States. MAKO's line of products include both the RIO® Robotic Arm Interactive Orthopedic ("RIO") system, which assists the surgeon during surgical procedures, as well as a number of proprietary disposable implants.  The Company's core product, the RIO system, is used for minimally invasive orthopedic knee resurfacing and for total hip procedures the Company calls MAKOplasty.®  Given the fact that over 92% of MAKO's revenue is attributed to the sale of RIO systems and MAKOplasty procedures, these are core operations that the Individual Defendants closely monitored.

3.      Despite the purported beneficial applications of the RIO system, however, MAKO was experiencing a slowdown in its business since the beginning of 2012.  The Individual Defendants (as defined herein) failed to disclose that the Company was poised to suffer a wider first quarter loss than the year before as it was experiencing higher costs and slower sales of its RIO system.  Moreover, utilization rates of the Company's RIO systems were dropping.  As such, demand for the Company's disposable products fell accordingly.

4.      Even with this knowledge, however, the Company's Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), defendants Maurice R. Ferré ("Ferré") and Fritz L. LaPorte ("LaPorte"), disseminated improper statements regarding the Company's financials and future business prospects.  More specifically, Ferré and LaPorte misrepresented and omitted material facts concerning the success of sales of the Company's RIO system, and issued financial guidance for 2012 that lacked a reasonable basis when made.  The combination of Ferré's and LaPorte's improper statements and the rest of the Individual Defendants' acquiescence and active

approval of the wrongdoing caused the Company to improperly represent MAKO's business health to the public.

5.      The truth began to emerge on May 7, 2012, when MAKO issued a press release announcing its first quarter 2012 financial results.  Revenue for the first quarter of 2012 dropped approximately 40% from the fourth quarter 2011 and missed analysts' consensus expectations by approximately 20%.  In addition, procedure volume also missed expectations by approximately 5%.  Similarly, the Company only sold six of its RIO systems, missing the average analyst target of nine placements.  In connection with these disappointing results, the Individual Defendants caused the Company to lower its previously issued full-year 2012 guidance for the sale of RIO systems.

6.      MAKO experienced these slowing results "at a time when orthopedic companies like Stryker, Zimmer (ZMH), and Johnson & Johnson (JNJ) have all talked about a stable, if not improving, orthopedic procedure market."  Not surprisingly, the revelations in the May 7, 2012 disclosure, triggered a mass investor exodus, causing MAKO's market capitalization to plunge 36%, erasing more than $644 million in market capitalization in a single day.  Certain of the Individual Defendants, including defendants S. Morry Blumenfeld ("Blumenfeld") and LaPorte did not let their own wealth suffer, however, and used adverse material, non-public information concerning the Company's current and future business prospects to sell over $4.4 million in artificially inflated MAKO stock.

7.      The revelations made in the May 7, 2012 press release have resulted in a significant decline in the value of MAKO, and have subjected MAKO to costly public and legal scrutiny that continues to harm the Company.  As a direct result of the Individual Defendants' wrongdoing, the Company is now the subject of multiple federal securities class action lawsuits

(the "Securities Class Actions") filed in the U. S. District Court for the Southern District of Florida on behalf of investors who purchased MAKO's shares.  The Securities Class Actions pose the risk of hundreds of millions of dollars in damages to the Company.

8.     Plaintiff brings this action against the Individual Defendants to repair the harm that they caused the Company with their faithless actions.

JURISDICTION AND VENUE

9.     Jurisdiction is conferred by 28 U.S.C. §1332.  Complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interests and costs.

10.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District Courts permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) because: (i) MAKO maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to MAKO, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

### Plaintiff

12.     Plaintiff Todd Deehl was a shareholder of MAKO at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current MAKO shareholder.  Plaintiff is a citizen of Kentucky.

### Nominal Defendant

13.     Nominal defendant MAKO is an emerging medical device company that markets an advanced robotic arm solution and orthopedic implants for orthopedic procedures.  MAKO's primary offering is MAKOplasty, an innovative, restorative surgical solution that enables orthopedic surgeons to treat patient specific osteoarthritic disease.  MAKOplasty is performed using the Company's proprietary RIO system, a technology platform that utilizes tactile guided robotic arm technology and patient specific planning and visualization to offer consistently reproducible precision to surgeons. MAKO is a Delaware corporation with its principal place of business located at 2555 Davie Road, Fort Lauderdale, Florida.  According to a Form 10-K filed by the Company on March 8, 2012, MAKO "conduct[s] all of [its] management activities, most of [its] research and development activities and assemble[s] many of [its] products at a single location in Fort Lauderdale, Florida."  MAKO's headquarters in Fort Lauderdale, Florida is the actual center of direction, control, and coordination for the Company's activities, and is also the location of the annual shareholder meetings.  In addition, it is the location where the assembly of the Company's products occurs, where its warehouse space is located, and where the acts complained of occurred.  MAKO is a citizen of Delaware and Florida.

### Individual Defendants

14.     Defendant Ferré is MAKO's President, CEO, and Chairman of the Board of

Directors (the "Board") and has been since November 2004.  Ferré is also named as a defendant in the Securities Class Actions that allege he violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  Ferré knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the Company's business prospects.  He also breached his duty of loyalty by allowing defendants to cause, or by himself causing, the Company to fail to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures regarding the nature of the Company's business prospects.  MAKO paid Ferré the following compensation as an executive:

| Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|--------------|---------------|----------------------------------------|------------------------|-------|
| 2011 | $417,951 | $2,283,000 | $1,262,085 | $252,156 | $3,675 | $4,218,867 |

Ferré is a citizen of Florida.

15.     Defendant LaPorte is MAKO's Senior Vice President of Finance and Administration, CFO, and Treasurer and has been since November 2004.  LaPorte is also named as a defendant in the Securities Class Actions that allege he violated sections 10(b) and 20(a) of the Exchange Act.  LaPorte knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the Company's business prospects.  He also breached his duty of loyalty by allowing defendants to cause, or by himself causing, the Company to fail to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures regarding the nature of the Company's business prospects.  While in possession of material, non-public information concerning MAKO's true business health, LaPorte sold 8,070 shares of his stock for $316,603.05 in proceeds.  MAKO paid LaPorte the following compensation as an executive:

| Year | Salary | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|---------------|----------------------------------------|------------------------|-------|
| 2011 | $279,053 | $546,904 | $109,546 | $3,538 | $939,041 |

LaPorte is a citizen of Florida.

16.     Defendant Christopher C. Dewey ("Dewey") is a MAKO director and has been since November 2004.  Dewey is also a member of MAKO's Audit Committee and has been since at least April 2011.  Dewey knowingly or recklessly breached his duty of loyalty by: (i) reviewing and approving improper statements concerning the Company's business prospects; and (ii) allowing defendants to cause, or by himself causing, the Company to fail to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures regarding the nature of the Company's business prospects.  MAKO paid Dewey the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | Total |
|-------------|-------------------|---------------|-------|
| 2011 | $35,500 | $44,565 | $80,065 |

Dewey is a citizen of New Jersey.

17.     Defendant Blumenfeld is a MAKO director and has been since July 2005. Blumenfeld knowingly or recklessly breached his duty of loyalty by allowing defendants to cause, or by himself causing, the Company to fail to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures regarding the nature of the Company's business prospects.   While in possession of material, non-public information concerning MAKO's true business health, Blumenfeld sold 98,143 shares of his stock for $4,092,268.63 in proceeds. MAKO paid Blumenfeld the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | Total |
|-------------|-------------------|---------------|-------|
| 2011 | $32,500 | $44,565 | $77,065 |

Blumenfeld is a citizen of Israel.

18.     Defendant Charles W. Federico ("Federico") is MAKO's Independent Lead Director and has been since March 2009 and a director and has been since June 2007.  Federico knowingly or recklessly breached his duty of loyalty by allowing defendants to cause, or by himself causing, the Company to fail to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures regarding the nature of the Company's business prospects.  MAKO paid Federico the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2011 | $51,500 | $89,130 | $140,630 |

Frederico is a citizen of North Carolina.

19.     Defendant Frederic H. Moll ("Moll") is a MAKO director and has been since August 2007.  Moll knowingly or recklessly breached his duty of loyalty by allowing defendants to cause, or by himself causing, the Company to fail to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures regarding the nature of the Company's business prospects.  MAKO paid Moll the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2011 | $34,000 | $44,565 | $78,565 |

Moll is a citizen of California.

20.     Defendant William D. Pruitt ("Pruitt") is a MAKO director and has been since June 2008.  Pruitt is also Chairman of MAKO's Audit Committee and has been since at least April 2011.  Pruitt knowingly or recklessly breached his duty of loyalty by: (i) reviewing and approving improper statements concerning the Company's business prospects; and (ii) allowing defendants to cause, or by himself causing, the Company to fail to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures regarding the nature

of the Company's business prospects.  MAKO paid Pruitt the following compensation as a director:

| | Fiscal Year | Fees Paid in Cash | Option Awards | Total |
|---|---|---|---|---|
| | 2011 | $35,000 | $44,565 | $79,565 |

Pruitt is a citizen of Florida.

21.    Defendant John G. Freund ("Freund") is a MAKO director and has been since October 2008.  Freund knowingly or recklessly breached his duty of loyalty by allowing defendants to cause, or by himself causing, the Company to fail to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures regarding the nature of the Company's business prospects.  MAKO paid Freund the following compensation as a director:

| | Fiscal Year | Fees Paid in Cash | Option Awards | Total |
|---|---|---|---|---|
| | 2011 | $33,500 | $44,565 | $78,065 |

Freund is a citizen of California.

22.    Defendant John J. Savarese ("Savarese") is a MAKO director and has been since October 2008.  Savarese knowingly or recklessly breached his duty of loyalty by allowing defendants to cause, or by himself causing, the Company to fail to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures regarding the nature of the Company's business prospects.  MAKO paid Savarese the following compensation as a director:

| | Fiscal Year | Fees Paid in Cash | Option Awards | Total |
|---|---|---|---|---|
| | 2011 | $34,000 | $44,565 | $78,565 |

Savarese is a citizen of California.

23.    Defendant Richard R. Pettingill ("Pettingill") is a MAKO director and has been since August 2010.  Pettingill is also a member of MAKO's Audit Committee and has been since

at least April 2011.  Pettingill knowingly or recklessly breached his duty of loyalty by: (i) reviewing and approving improper statements concerning the Company's business prospects; and (ii) allowing defendants to cause, or by himself causing, the Company to fail to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures regarding the nature of the Company's business prospects.  MAKO paid Pettingill the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2011 | $35,000 | $44,565 | $79,565 |

Pettingill is a citizen of California.

24.    The defendants identified in ¶¶14-15 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶14, 16-23 are referred to herein as the "Director Defendants."  The defendants identified in ¶¶16, 20, 23 are referred to herein as the "Audit Committee Defendants."  The defendants identified in ¶¶15, 17 are referred to herein as the "Insider Selling Defendants."  Collectively, the defendants identified in ¶¶14-23 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

25.    By reason of their positions as officers, directors, and/or fiduciaries of MAKO and because of their ability to control the business and corporate affairs of MAKO, the Individual Defendants owed and owe MAKO and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage MAKO in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of MAKO and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

26.     Each officer and director of the Company owes to MAKO and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.   In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

**Additional Duties of the Audit Committee Defendants**

27.     In addition to their general fiduciary duties, the Audit Committee Defendants, Dewey, Pettingill, and Pruitt, owed and owe specific additional duties to MAKO under the Company's Audit Committee Charter, which has been in effect since August 2010.  These duties include assisting the Board in monitoring the quality and integrity of the Company's financial statements, supervising the Company's compliance with legal and regulatory requirements, and policing the Company's internal controls and procedures.   According to the Audit Committee Charter, the following duties and responsibilities have been delegated by the Board to the Audit Committee Defendants:

**7.**     ***Review and discuss the quarterly financial statements***, including Management's Discussion and Analysis of Financial Condition and Results of Operations, with management and the independent auditors ***prior to the filing of the Company's Quarterly Report on Form 10-Q***. Also, the Committee shall discuss the results of the quarterly review and any other matters required to be communicated to the Committee by the independent auditors under generally accepted auditing standards.

\* \* \*

**11.**     ***Review and discuss any earnings press releases, as well as financial information and earnings guidance*** provided to analysts and rating agencies prior to their publication.

12. ***Review management's assessment of the effectiveness of internal control over financial reporting*** as of the end of the most recent fiscal year and the independent auditors' report on internal control over financial reporting. The Committee shall discuss with management, the internal auditors, and the independent auditors the adequacy and effectiveness of internal control over financial reporting, including any significant deficiencies or material weaknesses identified by management of the Company in connection with its required quarterly certifications under Section 302 of the Sarbanes-Oxley Act. In addition, the Committee shall discuss with management, the internal auditors, and the independent auditors any significant changes in internal control over financial reporting that are disclosed, or considered for disclosures, in the Company's periodic filings with the SEC. The Committee will also review the policies and procedures with respect to officer's expense accounts and perquisites, including use of corporate assets and consider the results of any review of these areas by the internal auditor or the independent auditor.

\* \* \*

15. ***Exercise oversight over management's performance of its responsibility for the preparation, presentation, and integrity of the Company's financial statements, for the appropriateness of the accounting principles and reporting policies that are used by the Company and for implementing and maintaining internal control over financial reporting***.

**Code of Business Conduct and Ethics**

28.     MAKO displays on its website the Company's Code of Business Conduct and Ethics (the "Code"). The Code requires all of the Company's "directors, employees and agents" to comply with the Company's policies. The Individual Defendants were and are subject to the Code. The Code covers a wide range of business practices and procedures, which if violated, will subject those employees to severe disciplinary action, "up to and including discharge from the Company and, where appropriate, civil liability and criminal prosecution." Some of the business practices and procedures covered by the Code include:

**1. Compliance with Laws, Rules and Regulations**

***Obeying the law, both in letter and in spirit, is one of the foundations on which the Company's ethical policies are built. All Company Representative must respect and obey the governmental laws, rules and regulations (including insider trading laws)*** of the cities, states and countries in which we operate.

Although laws may and do differ from state to state and country to country, matters of our basic business integrity transcend state and national borders. Pertinent laws of every jurisdiction in which the Company operates must be followed. Although not all Company Representatives are expected to know the details of these laws, rules and regulations, it is important to know enough to determine when to seek advice from your supervisor, the Compliance Officer or other appropriate personnel.

***Generally, it is illegal and against Company policy for any Company Representative who is aware of material nonpublic information relating to the Company, to buy or sell securities of the Company, or recommend that another person buy, sell or hold the Company's securities***. More detailed rules governing the trading of securities by Company Representatives are set forth in the Company's Policy Statement on Insider Trading Policy Compliance. Any Company Person who is uncertain about his or her responsibilities under the Insider Trading Policy should consult with the Company's Compliance Officer before making any such purchase or sale.

*   *   *

### 4. Insider Trading

***Company Representatives who have access to confidential information are not permitted to use or share that information for stock trading purposes or for any other purpose except the conduct of our business. All non-public information about the Company should be considered confidential information***. To use non-public information for personal financial benefit, or to "tip" others (including without limitation friends and Family Members) who might make an investment decision on the basis of this information, is not only unethical but also illegal. *A more detailed discussion of the insider trading laws can also be found in the Company's Policy Statement on Insider Trading Compliance.*

*   *   *

### 9. Record-Keeping and Disclosures

***The Company requires honest and accurate recording and reporting of information in order to make responsible business decisions and to provide full, fair, accurate and timely disclosure pursuant to the rules and requirements of the SEC or otherwise.***

**Control, Access, and Authority**

29.     The Individual Defendants, because of their positions of control and authority as

officers and/or directors of MAKO, were able to and did, directly and/or indirectly, exercise

- 13 -

control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

30.     Because of their advisory, executive, managerial, and directorial positions with MAKO, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and growth prospects of MAKO.  While in possession of this material, non-public information, the Individual Defendants made improper representations regarding the Company's business prospects.

31.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of MAKO, and was at all times acting within the course and scope of such agency.

**Reasonable and Prudent Supervision**

32.     To discharge their duties, the officers and directors of MAKO were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of MAKO were required to, among other things:

(a)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial health;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(c)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid

wasting the Company's assets, and to maximize the value of the Company's stock;

(d)      remain informed as to how MAKO conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(e)      ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

**Breaches of Duties**

33.      Each Individual Defendant, by virtue of his position as an officer and/or director, owed to the Company and to its shareholders the fiduciary duty of loyalty and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.   The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of MAKO, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.   The conduct of the Individual Defendants who were also officers and/or directors of the Company have been ratified by the remaining Individual Defendants who collectively comprised all of MAKO's Board.

34.      The Individual Defendants breached their duty of loyalty by allowing defendants to cause, or by themselves causing, the Company to make improper statements regarding its business prospects.   The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.   In addition, as a result of the Individual Defendants'

illegal actions and course of conduct, the Company is now the subject of the Securities Class Actions.  As a result, MAKO has expended, and will continue to expend, significant sums of money.

### CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

35.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

36.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did (i) deceive the investing public, including shareholders of MAKO, regarding the Individual Defendants' management of MAKO's operations and the prospects of the Company's business; (ii) conceal certain of the Individual Defendants' insider sales; and (iii) enhance the Individual Defendants' executive and directorial positions at MAKO and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

37.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.  During this time, the Individual Defendants caused the Company to issue improper financial statements.

38.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual

Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment; and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

39.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

40.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

## FACTUAL BACKGROUND

41.     MAKO is a medical device company that markets its advanced robotic arm solution and orthopedic implants for orthopedic procedures it calls MAKOplasty.  The Company generates revenue from: (i) unit sales of the Company's RIO system and MAKOplasty applications, including associated instrumentation, installation services, and training; (ii) sales of implants and disposable products utilized in MAKOplasty procedures; and (iii) sales of warranty and maintenance services.  For the year ended December 31, 2011, MAKO earned $84.5 million in revenue, $78.5 million or over 92% of which was attributed to the sale of RIO systems and the performance of MAKOplasty procedures.  As a result of their importance to the Company's bottom line, RIO system sales and performed procedures are considered core operations.

42.     Between January 9, 2012 and May 7, 2012, the Individual Defendants disseminated and caused MAKO to disseminate improper statements concerning the Company's financials and future business prospects.   More specifically, the Individual Defendants misrepresented and omitted material facts concerning the success of sales of the Company's RIO system, and issued financial guidance for 2012 that lacked a reasonable basis when made.  As a result of these improper statements, which hid adverse trends from the market, the price of MAKO common stock traded at artificially inflated prices, until the Individual Defendants could no longer conceal the truth.

## IMPROPER STATEMENTS

43.     The first improper statement was disseminated on January 9, 2012, when MAKO issued a press release announcing selected operating results for the fourth quarter and full-year 2011 that included, the number of RIO systems sold, the number of MAKOplasty procedures performed in 2011, as well as the Company's 2012 annual guidance.   In this press release, defendant Ferré touted the Company's "strong RIO system sales" during the previous quarter and suggested a continuation of this positive trend in the Company's business by stating that "MAKO anticipates that it will sell 56 to 62 RIO systems" in 2012.   This guidance was improper and lacked a reasonable basis when made because Ferré omitted the fact that the Company was experiencing slower sales of its RIO system and utilization rates of the Company's RIO system were dropping.  The press release stated in part:

> "*We are pleased with our strong RIO system sales and the interest in our hip application during the fourth quarter.  In addition, we believe the increased MAKOplasty procedure volume and utilization trends continue to demonstrate the clinical value of our technology,*" said Maurice R. Ferre, M.D., President and Chief Executive Officer of MAKO.  "*2011 was a positive year for MAKO and we look forward to continuing to drive the adoption of MAKOplasty in 2012*."

**2012 Annual Guidance**

*MAKO anticipates that it will sell 56 to 62 RIO systems and that its customers will perform 11,000 to 13,000 MAKOplasty procedures in 2012*.

44.     On March 6, 2012, the Company issued a press release once again reporting MAKO's operating results for the fourth quarter and full-year 2011.  In this press release, defendant Ferré once again touted the Company's positive results in 2011 and caused the Company's investors to falsely believe that these results will continue in 2012.  Ferré specifically stated that he "anticipate[s] that [MAKO's] positive results in 2011 will carry forward into 2012."  This was not mere puffery.  This statement was improper because Ferré and the rest of the Individual Defendants knew by March 6, 2012, that MAKO was poised to suffer a wider first quarter loss as it was experiencing higher costs and slower sales of its RIO system, and because utilization rates of the Company's RIO system were dropping.  Even with this knowledge, however, the Individual Defendants failed to police the improper statements disseminated on half of the Company.  Due to the lack of internal controls policing the Company's disclosures, the press release stated, in part:

> "We are pleased with our strong operating results for the fourth quarter and the full year 2011, particularly our 91% growth in revenue from the prior year.  *In addition, we believe the increased level of RIO system sales, initial interest in our hip application, increased MAKOplasty procedure volume and utilization trends point to the clinical value of our technology*" said Maurice R. Ferre, M.D., President and Chief Executive Officer of MAKO.  "*We anticipate that our positive results in 2011 will carry forward into 2012 as we continue to drive the adoption of MAKOplasty*."

45.     On March 8, 2012, the Company filed with the U.S. Securities and Exchange Commission ("SEC") on Form 10-K its Annual Report for the year ended December 31, 2011.  The Form 10-K confirmed the financial results contained in the March 6, 2012 press release.

## REASONS THE STATEMENTS WERE IMPROPER

46.     The statements referenced above were each improper when made because they

failed to disclose and misrepresented the following material, adverse facts, which the Individual

Defendants knew, consciously disregarded, or were reckless in not knowing:

        (a)     the Company was poised to suffer a wider first quarter loss as it was

experiencing higher costs and slower sales of its RIO system;

        (b)     utilization rates of the Company's RIO system were dropping; and

        (c)     the Company's 2012 outlook lacked a reasonable basis when made.

<b>THE TRUTH EMERGES</b>

        47.     On May 7, 2012, MAKO issued a press release announcing its operating results

for the first quarter of 2012 ending March 31, 2012.  The poor financial results revealed in the

press release widely missed both analyst expectations and the Company's own guidance.

Revenue for the first quarter of 2012 dropped approximately 40% from the fourth quarter of

2011 and missed analysts' consensus expectations by approximately 20%.  In addition, procedure

volume also missed expectations by approximately 5%.  Similarly, the Company only sold six of

its RIO systems, missing the average analyst target of nine placements.  The press release stated

in part:

> RIO Systems – **_Six RIO systems were sold during the first quarter_**, of which five
> were sold to domestic customers and one was sold to our distributor in Japan, for
> use in securing regulatory approvals and to demonstrate MAKOplasty to build
> interest in that market.  These six RIO systems bring MAKO's worldwide
> commercial installed base of RIO systems to 118 systems and domestic
> commercial installed base to 116 systems as of March 31, 2012.  The revenue
> associated with the sale of the international system was deferred due to a
> contingent obligation to reimburse the distributor for the costs it incurs in the
> regulatory process should the agreement be terminated prior to obtaining
> regulatory approval.  The revenue associated with this sale will be recognized
> upon obtaining regulatory approval.

*   *   *

> "**_While the first quarter is typically our slowest quarter of the year and system
> placements are very difficult to predict on a quarterly basis, our results this_**

- 20 -

*quarter were at the low end of our expectations*," said Maurice R. Ferre, M.D., President and Chief Executive Officer of MAKO.  "On the positive side, we were encouraged by the continued interest shown in our hip application and the quality and quantity of clinical data that continues to be generated that supports the clinical and economic benefit of MAKOplasty.  Additionally, we are pleased to have enhanced our working capital flexibility through a credit facility arrangement with Deerfield, an acknowledged leader in health care investing."

2012 First Quarter Financial Review

\* \* \*

*Operating expenses were $25.9 million in the first quarter of 2012 compared to $20.0 million in the first quarter of 2011.  The increase in operating expenses* was primarily attributable to the following: an increase in sales and marketing activities for the continued expansion of the direct sales force and commercialization of the RIO system, MAKOplasty applications and RESTORIS implant systems; an increase in research and development activities associated with continuous improvement of the RIO system and MAKOplasty applications and the development of potential future products; and an increase in general and administrative costs as MAKO continued to build infrastructure to support growth.

*Net loss for the three months ended March 31, 2012 was $11.7 million, or $(0.28) per basic and diluted share, based on average basic and diluted shares outstanding of 41.7 million*.  This compares to a net loss for the same period in 2011 of $11.0 million, or $(0.27) per basic and diluted share, based on average basic and diluted shares outstanding of 40.1 million.

Cash, cash equivalents and investments were $46.8 million as of March 31, 2012 compared to $58.7 million as of December 31, 2011.

Outlook

*Based on the slower than expected start to the year, MAKO now anticipates selling 52 to 58 RIO systems in 2012, which compares to prior guidance of 56 to 62 RIO system sales*.  MAKOplasty procedure guidance remains unchanged at 11,000 to 13,000 expected procedures in 2012.

48.     In connection with these disappointing results, the Company pointed to "missed" orders and lowered its previously issued full-year 2012 placement guidance by four RIO systems.  In addition to the foregoing, utilization rates for the Company's RIO system dropped sequentially, falling approximately 8%.  Notably, MAKO experienced these slowing results "at a

time when orthopedic companies like Stryker, Zimmer (ZMH), and Johnson & Johnson (JNJ) have all talked about a stable, if not improving, orthopedic procedure market."

49.     Securities analysts quickly reacted to the abrupt reduction in the Company's guidance, downgrading MAKO stock to "neutral" from "buy" and to "market perform" from "outperform."   In addition, one analyst specially noted the tremendous boost the Individual Defendants' improper 2012 guidance had on MAKO stock, and the resulting deflation after the truth emerged.  In an article titled "MAKO shares plunge on weak results, outlook," *Reuters.com* reported as follows:

> ***Mako now expects to sell 52 to 58 RIO systems*** -- a robotic-arm interactive system used for minimally invasive knee procedures -- during the full year. ***It had previously forecast sales of 56 to 62 RIO systems***.
>
> ***"While management reduced its guidance by a small amount, we are concerned that it remains too high and see a risk of further misses and/or guidance reductions," Mizuho Securities analyst Michael Matson wrote, downgrading the stock to "neutral" from "buy"***.
>
> Echoing Matson's view, William Blair & Co analyst Matthew O'Brien said the revised outlook range requires a strong performance from Mako during the remainder of the year, which may prove challenging as the sales cycle appears to be showing only modest improvement.
>
> ***Matson downgraded Mako shares to "market perform" from "outperform"***.
>
> ***Mako shares, which have gained 44 percent since the company gave an upbeat outlook for 2012 in January, fell 33 percent to $27.89 on Tuesday on the Nasdaq***.

## INSIDER SELLING

50.     The Individual Defendants' knowledge of the Company's operations and financial health, stability, and future business prospects is also shown in certain MAKO officers' and directors' sales of MAKO stock.  The Insider Selling Defendants, Blumenfeld and LaPorte, were privy to adverse, non-public information which they exploited for their own benefit, to the

exclusion of other shareholders.  While continuously making or causing the Company to make improper statements touting MAKO's purported positive growth, and effectively concealing negative trends in its business, Blumenfeld and LaPorte sold massive amounts of Company stock in order to capitalize on the Company's inflated stock price that they had helped improperly create.

51.     As a director since July 2005, defendant Blumenfeld was privy to material, non-public information about negative trends affecting the Company's business and lowered guidance expectations.  Blumenfeld was responsible for approving statements in the Company's press releases and public filings, which included disclosures concerning MAKO's purported positive growth but omitted material negative information affecting the Company's current and future business prospects.  Blumenfeld engaged in insider trading activity at a time when he knew adverse material, non-public information.

52.     While in possession of this knowledge, defendant Blumenfeld sold 98,143 shares of MAKO stock for proceeds of $4,092,268.63 in less than one month of trading activity. Adding to the suspicions of Blumenfeld's sales is that they were timed to maximize profit from MAKO's then artificially inflated stock price.  Indeed, Blumenfeld's sales occurred immediately after spikes in the Company stock, with several trades close to the period high price.

53.     As the Company's Senior Vice President of Finance and Administration, CFO, and Treasurer, defendant LaPorte was a member of Company management.  He was privy to material, non-public information about negative trends affecting the Company's business and lowered guidance expectations.  LaPorte was responsible for his statements in the Company's press releases and public filings, which included disclosures concerning MAKO's purported positive growth but omitted material, negative information affecting the Company's current and

future business prospects.  LaPorte engaged in insider trading activity at a time when he knew adverse material, non-public information.

54.     While in possession of this knowledge, defendant LaPorte sold 8,070 shares of his personally held MAKO stock for proceeds of $316,603.05.   Adding to the suspicions of LaPorte's sales is that they were timed to maximize profit from MAKO's then artificially inflated stock price.  Indeed, LaPorte's sales occurred just prior to drops in the Company's stock.

55.     Combined, defendants Blumenfeld and LaPorte sold over $4.4 million worth of MAKO stock.  Moreover, both of these Insider Selling Defendants reviewed, approved, and disseminated the improper statements that helped artificially inflate MAKO stock, just in time for these wayward fiduciaries to line their pockets at the expense of the Company.   The following is a table showing the total insider sales that occurred during the period:

| Insider Last Name | Transaction Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | | | | |
| BLUMENFELD | 2/28/2012 | 24,665 | $40.03 | $987,401.61 |
| | 2/29/2012 | 7,500 | $40.00 | $300,000.00 |
| | 3/19/2012 | 32,835 | $40.00 | $1,313,400.00 |
| | 3/26/2012 | 8,513 | $45.00 | $383,085.00 |
| | 3/27/2012 | 24,630 | $45.00 | $1,108,382.02 |
| | | **98,143** | | **$4,092,268.63** |
| | | | | |
| LAPORTE | 2/1/2012 | 2,690 | $36.17 | $97,291.38 |
| | 3/1/2012 | 2,690 | $39.06 | $105,080.28 |
| | 4/2/2012 | 2,690 | $42.47 | $114,231.39 |
| | | **8,070** | | **$316,603.05** |
| | | | | |
| **Total:** | | **106,213** | | **$4,408,871.68** |

## DAMAGES TO MAKO

56.    As a result of the Individual Defendants' improprieties, MAKO disseminated improper, public statements concerning the Company's business prospects.  These improper statements have devastated MAKO's credibility as reflected by the Company's over $644 million, or 36%, one-day market capitalization loss.

57.    Further, as a direct and proximate result of the Individual Defendants' actions, MAKO has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to:

      (a)    costs incurred in investigating and defending MAKO and certain officers and directors in the Securities Class Actions;

      (b)    costs incurred from paying any potential settlement or adverse judgment in the Securities Class Actions; and

      (c)    costs incurred from compensation and benefits paid to the defendants who have breached their duties to MAKO.

58.    Moreover, these actions have irreparably damaged MAKO's corporate image and goodwill.  For at least the foreseeable future, MAKO will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in improper behavior and have misled the investing public, such that MAKO's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

59.    Plaintiff brings this action derivatively in the right and for the benefit of MAKO to redress injuries suffered, and to be suffered, by MAKO as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and

abetting thereof, by the Individual Defendants.  MAKO is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

60.    Plaintiff will adequately and fairly represent the interests of MAKO in enforcing and prosecuting its rights.

61.    Plaintiff was a shareholder of MAKO at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current MAKO shareholder.

62.    The current Board of MAKO consists of the following nine individuals: defendants Ferré, Blumenfeld, Dewey, Federico, Moll, Freund, Pettingill, Pruitt, and Savarese. Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because a Majority of the Current Board Face a Substantial Likelihood of Liability for Their Misconduct**

63.    As explained above, defendant Ferré breached his fiduciary duty of loyalty by making improper statements in the Company's press releases and SEC filings regarding the Company's business prospects.

64.    Defendant Blumenfeld sold MAKO stock under highly suspicious circumstances. As explained above, Blumenfeld possessed material, non-public Company information and used that information to benefit himself.  He sold stock based on this knowledge of material, non-public Company information regarding negative trends affecting the Company's current and future business prospects and the resulting decrease in the value of his holdings of MAKO stock. Accordingly, Blumenfeld faces a substantial likelihood of liability for breach of his fiduciary duty of loyalty.  Any demand upon Blumenfeld is futile.

65.     Defendants Dewey, Pettingill, and Pruitt, as members of the Audit Committee, reviewed and approved the improper statements and earnings guidance.  The alleged misconduct related to the core of the Company's business, the sale of RIO systems and MAKOplasty procedures.  Given their duty to "[r]eview and discuss any earnings press releases, as well as financial information and earnings guidance…", and their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees, and directors, and attendance at management and board meetings, Dewey, Pettingill, and Pruitt would have perceived the Company's true business health when the improper statements were being disseminated.  Thus Dewey, Pettingill, and Pruitt knew or recklessly disregarded the Company's performance of its core business.  Moreover, the Audit Committee Charter also provides that it is responsible for compliance with accounting, legal, and regulatory requirements.  Accordingly, the Audit Committee Defendants breached their fiduciary duty of loyalty because they participated in the wrongdoing described herein.  Thus, Dewey, Pettingill, and Pruitt face a substantial likelihood of liability for their breach of fiduciary duties so any demand upon them is futile.

66.     Defendants Ferré, Blumenfeld, Dewey, Federico, Moll, Freund, Pettingill, Pruitt, and Savarese, all nine members of the Board, breached their duty of loyalty by causing the Company to fail to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures.  Ferré, Blumenfeld, Dewey, Federico, Moll, Freund, Pettingill, Pruitt, and Savarese also failed to prevent the other Individual Defendants from committing this wrongdoing.  As a result of Ferré, Blumenfeld, Dewey, Federico, Moll, Freund, Pettingill, Pruitt, and Savarese's course of conduct, the Company is now the subject of the Securities Class Actions.

67.     Moreover, the acts complained of constitute violations of the fiduciary duties owed by MAKO's officers and directors and these acts are incapable of ratification.

68.     MAKO has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for MAKO any part of the damages MAKO suffered and will suffer thereby.

69.     If MAKO's current and past officers and directors are protected against personal liability for their acts of mismanagement and breach of fiduciary duty alleged in this Amended Complaint by directors and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, i.e., monies belonging to the stockholders of MAKO.   However, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by MAKO against these defendants, known as the "insured versus insured exclusion."  As a result, if these directors were to cause MAKO to sue themselves or certain of the officers of MAKO, there would be no directors and officers' insurance protection and, thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  If there is no directors and officers' liability insurance, then the current directors will not cause MAKO to sue the defendants named herein, since they will face a large uninsured liability and lose the ability to recover for the Company from the insurance.

70.    Moreover, despite having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recovery for MAKO for any of the wrongdoing alleged by plaintiff herein.  There is no evidence that the Board even subjected any of the Individual Defendants to disciplinary action, as required by the Company's own Code.

## COUNT I
### Against the Individual Defendants for Breach of Fiduciary Duty

71.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72.    The Individual Defendants owed and owe MAKO fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe MAKO the highest obligation of good faith, fair dealing, loyalty, and due care.

73.    The Individual Defendants and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty.  More specifically, the Individual Defendants violated their duty of good faith by creating a culture of lawlessness within MAKO, and/or consciously failing to prevent to Company from engaging in the unlawful acts complained of herein.

74.    The Officer Defendants, Ferré and LaPorte, either knew, were reckless, or were grossly negligent in disregarding the illegal activity of such substantial magnitude and duration. The Officer Defendants knowingly, recklessly, or were grossly negligence: (i) made improper statements in the Company's press releases and public filing concerning the Company's business prospects; and (ii) breached their duty of loyalty by allowing defendants to cause, or by themselves causing, the Company to fail to implement adequate internal controls and procedures

to ensure the accuracy of the Company's disclosures regarding the nature of the Company's business prospects.

75.     Director Defendants Ferré, Blumenfeld, Dewey, Federico, Freund, Moll, Pettingill, Pruitt, and Savarese, as directors of the Company, owed MAKO the highest duty of loyalty.  The Director Defendants knowingly or recklessly breached their duty of loyalty by allowing defendants to cause, or by themselves causing, the Company to fail to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures.

76.     The Audit Committee Defendants, Dewey, Pettingill, and Pruitt, breached their fiduciary duty of loyalty by approving the statements described herein which were made during their tenure on the Audit Committee, which they knew or were reckless in not knowing contained improper statements and omissions.  The Audit Committee Defendants completely and utterly failed in their duty of oversight, and Dewey, Pettingill, and Pruitt failed in their duty to appropriately review financial results, as required by the Audit Committee Charter in effect at the time.

77.     Additionally, defendants Blumenfeld and LaPorte breached their duty of loyalty by selling MAKO stock on the basis of the knowledge of the improper information described above before that information was revealed to the Company's shareholders.  The information described above was proprietary, non-public information concerning the Company's current and future business prospects.   It was a proprietary asset belonging to the Company, which Blumenfeld and LaPorte used for their own benefit when they sold MAKO common stock.

78.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, MAKO has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

79.     Plaintiff, on behalf of MAKO, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

80.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

81.     As a result of the Individual Defendants' failure to implement adequate internal controls to ensure that its public statements and financial results were accurate, defendants Ferré, LaPorte, and MAKO made improper statements in the Company's press releases and public filings.  As a result, MAKO is now subject to the Securities Class Actions.  The Individual Defendants have caused MAKO to waste its assets by forcing it to defend itself in the ongoing litigation, in addition to any ensuing costs from a potential settlement or adverse judgment. Further, the Individual Defendants have caused MAKO to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty.

82.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

83.     Plaintiff, on behalf of MAKO, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Unjust Enrichment

84.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of MAKO.  The Individual Defendants were

unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to MAKO.

86.     Defendants LaPorte and Blumenfeld sold MAKO stock while in possession of material adverse, non-public information that artificially inflated the price of MAKO stock.  As a result, LaPorte and Blumenfeld profited from their misconduct and were unjustly enriched through their exploitation of material and adverse inside information.

87.     Plaintiff, as a shareholder and representative of MAKO, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

88.     Plaintiff, on behalf of MAKO, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of MAKO, demands judgment as follows:

A.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B.     Directing MAKO to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect MAKO and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote of the following Corporate Governance Policies:

1.     a provision to effectively control insider selling;

2.      a proposal to strengthen the Company's disclosure controls and procedures;

3.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

4.      a provision to permit the shareholders of MAKO to nominate at least three candidates for election to the Board;

C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of MAKO has an effective remedy;

D.      Awarding to MAKO restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by defendants, including all ill-gotten gains from the Insider Selling Defendants;

E.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 29, 2012                    Respectfully submitted,
          Boca Raton, Florida

_____
ERIC LEE (Bar No. 961299)
lee@leeamlaw.com
Lee & Amtzis, P.L.
5550 Glades Road, Suite 401
Boca Raton, FL  33431
Telephone:  (561) 981-9988
Facsimile:  (561) 981-9980

and

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
GINA STASSI
KEVIN S. KIM
600 B Street, Suite 1900
San Diego, CA 92101
Telephone:  (619) 525-3990
Facsimile:  (619) 525-3991
brobbins@robbinsumeda.com
csmith@robbinsumeda.com
gstassi@robbinsumeda.com
kkim@robbinsumeda.com

RYAN & MANISKAS, LLP
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: (484) 588-5516
Facsimile: (484) 450-2582
rmaniskas@rmclasslaw.com

**Attorneys for Plaintiff**

<u>VERIFICATION</u>

I, Todd Deehl, under penalty of perjury, state as follows:

I am the Plaintiff in the above-captioned action. I have read the foregoing Complaint and authorized its filing. Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.

DATED: _27 Jun 12_                    _____
                                       Todd Deehl